UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RAY COPELAND,

                                               Plaintiff,

        -against-

WESTCHESTER COMMUNITY OPPORTUNITY
PROGRAM, INC. and CHARLENE BLACKWOOD,
*Individually*,

                                              Defendants.
------------------------------------------------------------------X

Case No:

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff RAY COPELAND, by her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the <u>Title VII of the Civil Rights Act of 1964</u>, as amended ("Title VII") and the <u>New York State Human Rights Law</u>, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's sex and retaliated against for opposing the discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred therein.

1

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated December 5, 2022 with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as <u>Exhibit A</u>.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8. At all times material, Defendant WESTCHESTER COMMUNITY OPPORTUNITY PROGRAM ("WESTCOP") was a not-for-profit corporation organized and operating in the State of New York, with its principal place of business located at 2 Westchester Plaza, Elmsford, New York 10523.

9. Defendant WESTCOP is a social service organization that provides, among other things, housing for the homeless.

10. At all times material, Defendant CHARLENE BLACKWOOD ("BLACKWOOD") is and was employed by Defendant WESTCOP as Plaintiff's supervisor.

11. At all times material, Defendant BLACKWOOD is and was Plaintiff's supervisor and had managerial and supervisory authority over Plaintiff. Defendant BLACKWOOD had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment. Defendant BLACKWOOD had the power to direct Plaintiff's daily work activities.

12. At all times material, Defendant WESTCOP has and had 15 or more employees for each working day in each 20 or more calendar weeks in the current or preceding calendar year.

13. At all times material, Defendant WESTCOP is and was Plaintiff's employer under Title VII.

14. At all times material, Defendant WESTCOP is and was Plaintiff's employer under the NYSHRL.

15. At all times material, Defendant BLACKWOOD is and was Plaintiff's employer under the NYSHRL.

16. At all times material, Plaintiff was an employee of Defendant WESTCOP and Defendant BLACKWOOD.

17. Defendant WESTCOP and Defendant BLACKWOOD are at times collectively referred to herein as "Defendants."

18. At all times material, all parties mentioned herein worked and/or continue to be employed with Defendants.

## MATERIAL FACTS

19. In or around March 2019, Plaintiff began his employment with Defendant WESTCOP as a Client Care Worker earning approximately $16.85 per hour, or approximately $31,000 excluding benefits, bonuses and overtime.

20. When Plaintiff was hired, Plaintiff was assigned to Defendant WESTCOP's facility located at 22 West 1 Street, Mount Vernon, New York 10550. ("Mount Vernon Annex").

21. At all times material, Mount Vernon Annex is one of Defendant WESTCOP's women's shelters.

22. In or around May 2020, Defendant BLACKWOOD assumed a supervisory role over Plaintiff. Shortly thereafter, Defendant BLACKWOOD began to sexually harass Plaintiff.

23. Often, Defendant BLACKWOOD would tell Plaintiff that he was a "**sexy, Black man.**"

24. Defendant BLACKWOOD would also refer to Plaintiff at work as "**her snack**" and repeatedly told Plaintiff that she liked "**tall, dark chocolate men**" like himself. Defendant

3

BLACKWOOD made these statements in the presence of co-workers causing Plaintiff to feel extremely embarrassed and humiliated.

25. Plaintiff frequently asked Defendant BLACKWOOD to refrain from making such statements, however, Defendant BLACKWOOD ignored his requests.

26. In or around May 2020, Defendant BLACKWOOD began to often inappropriately caress Plaintiff on his arms and back. Plaintiff would immediately tell Defendant BLACKWOOD to stop and not to touch him, whereafter Defendant BLACKWOOD would respond, in sum and substance, "**oh come on you sexy chocolate**." Plaintiff was disgusted.

27. Defendant BLACKWOOD would repeatedly and unnecessarily contrive to meet with Plaintiff in private. During those private meetings, Defendant BLACKWOOD would leer and smile lasciviously at Plaintiff.

28. As a result of Defendant BLACKWOOD's sexual harassment, Plaintiff was forced to endure an unbearably hostile work environment. The hostile work environment made it difficult for Plaintiff to work effectively.

29. Plaintiff sought to maintain professional decorum at the workplace and told Defendant BLACKWOOD that her behavior was inappropriate in the workplace.

30. On or about December 15, 2020, Defendant BLACKWOOD approached Plaintiff and gave him a sweater bearing the letters of his fraternity. Defendant BLACKWOOD informed Plaintiff that it was his birthday present and bragged how it cost her approximately $150.00.

31. In or about April 2021, due to the death of his nephew, Plaintiff was compelled to take about one month off of work. Because bereavement time was limited to about four to five days, Plaintiff was informed by Human Resources ("HR") that he could use his vacation and personal time to grieve his nephew and arrange for him to be laid to rest.

32. Although Plaintiff had sufficient vacation and personal time available, Defendant BLACKWOOD told Plaintiff, upon his return to work, that he would not be paid for the time he had taken off.

33. In or around May 2021, Plaintiff returned to work and was transferred to Defendant WESTCOP's facility known as the New Rochelle Oasis located at 19 Washington Avenue, New Rochelle, New York 10801 ("New Rochelle Oasis").

34. At all times material, New Rochelle Oasis is one of Defendant WESTCOP's men's shelters.

35. Plaintiff hoped that the relocation would put a stop to the sexual harassment. However, approximately two weeks after Plaintiff's transfer to the New Rochelle Oasis, Defendant BLACKWOOD was relocated to New Rochelle Oasis and continued her unwanted sexual advances towards Plaintiff.

36. Seeking to avoid the incessant sexual harassment, Plaintiff asked Defendant BLACKWOOD to relocate him back to the Mount Vernon Annex. Defendant BLACKWOOD refused, insisting that Plaintiff would stay put.

37. After Plaintiff repeatedly rebuffed Defendant BLACKWOOD's advances and asked her to stop her harassment, she became hostile toward him.

38. On or about June 13, 2021, Defendant BLACKWOOD e-mailed Plaintiff that he was "**too stupid**" to follow his regular schedule.

39. Defendant BLACKWOOD also subjected Plaintiff to scrutiny to which she did not subject other employees she supervised. For example, when other employees arrived at work late they were not questioned; however, on the rare occasions when Plaintiff arrived at work late, Defendant BLACKWOOD would harangue him about his tardiness and send him home without pay. In fact, on three separate occasions, in the summer of 2021, Defendant

BLACKWOOD sent Plaintiff home without pay, claiming it was because he had arrived at work late.

40. On or about June 28, 2021, Plaintiff e-mailed Defendant WESTCOP's HR personnel, Lyan-Joy Lugay and Delia Wheatley-Murphy, to alert them of the ongoing harassment he was facing in the hands of BLACKWOOD. Plaintiff never received a response.

41. Defendant BLACKWOOD began to constantly question Plaintiff's intelligence and ability to execute the functions of his job despite his skills and education.

42. In or around July 2021, Defendant BLACKWOOD sent Plaintiff home without pay for the fourth time - allegedly because he could not answer off the top of his head how many clients were housed in the facility. In turn, Plaintiff made a complaint and subsequently met with Tiffany Brown ("Brown"), Executive Director, and Colin Dacres ("Dacres"), Chief Operating Officer.

43. Although Brown and Dacres agreed to compensate Plaintiff for the one day of pay he lost after being sent home for the fourth time, Brown and Dacres completely failed to address any of Plaintiff's complaints of sexual harassment perpetrated by Defendant BLACKWOOD. Dacres merely told Plaintiff to **"give it two weeks"** and see how things went. Plaintiff was devastated.

44. On or about August 30, 2021, Plaintiff was called into a mandatory meeting with Defendant WESTCOP's HR Department. Defendant BLACKWOOD was present at the meeting along with two members of the HR Department. During the meeting, Defendant BLACKWOOD repeatedly whispered into the ear of Robert, one of the HR representatives and Plaintiff was reprimanded for allegedly failing to complete a timesheet correctly. As the meeting concluded, Defendant BLACKWOOD looked at Plaintiff and asked, in sum and substance,

"Is there anything you want to say to me?" Fearing reprisals, Plaintiff declined to say anything to Defendant BLACKWOOD.

45. The above are just some of the acts of discrimination that Plaintiff experienced while employed by Defendants.

46. Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful, discriminatory and retaliatory treatment.

47. But for the fact of his sex, Plaintiff would not have faced sexual harassment.

48. Plaintiff's performance was, upon information and belief, above average during the course of his employment with Defendants.

49. Plaintiff has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

50. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

52. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## First Cause of Action for Discrimination
## Under Title VII
## (Not Against Individual Defendant)

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

54. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, **sex**, or national origin.

55. Defendant WESTCOP violated the sections cited herein as set forth.

56. Plaintiff is entitled to the maximum amount allowed under this statute.

## Second Cause of Action for Retaliation
## Under Title VII
## (Not Against Individual Defendant)

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides, in pertinent part, that it shall be unlawful employment practice for an employer:

> (1) to… discriminate against any of his employees…because he has opposed any practice made by an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

8

59. Defendant WESTCOP violated the sections cited herein as set forth.

60. Plaintiff is entitled to the maximum amount allowed under this statute.

### Third Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against All Defendants)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice:
>
> (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

63. Defendant WESTCOP and Defendant BLACKWOOD violated the sections cited herein as set forth.

64. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Not Against Defendant WESTCOP)

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. New York State Executive Law § 296(6) provides in pertinent part, that it shall be an unlawful discriminatory practice "…for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

67. Defendant BLACKWOOD violated the statute cited herein as set forth.

68. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fifth Cause of Action for Retaliation
### Under the New York State Executive Law
### (Against All Defendants)

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. New York State Executive Law § 296(7) provides that,

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

71. Defendant WESTCOP and Defendant BLACKWOOD violated the sections cited herein as set forth.

72. Plaintiff is entitled to the maximum amount allowed under this statute.

### JURY DEMAND

73. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the New York State Human Rights Law, New York State Executive Law § 296, *et. seq.*, in that Defendants discriminated against Plaintiff and created a hostile work environment based on Plaintiff's sex (male), retaliated against Plaintiff due to his complaints of discrimination;

B. Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering and injury to Plaintiff's reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff liquidated damages;

E. Awarding Plaintiff prejudgment interest;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
January 4, 2023

> PHILLIPS & ASSOCIATES,
> ATTORNEYS AT LAW, PLLC
>
> By: _____
> Stefanie Shmil
> Steven Fingerhut
> *Attorneys for Plaintiff*
> 45 Broadway, Suite 620
> New York, New York 10006
> (212) 248-7431
> sshmil@tpglaws.com
> sfingerhut@tpglaws.com

# EXHIBIT A

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

December 05, 2022

Mr. Ray Copeland
c/o Steven Fingerhut, Esquire
Law Offices of Phillips & Assocs.
45 Broadway, Suite 430
New York, NY  10006

Re:  EEOC Charge Against Westchester Community Opportunity Program
      No. 520202201407

Dear Mr. Copeland:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

              Sincerely,

              Kristen Clarke
             Assistant Attorney General
              Civil Rights Division

          by  /s/ Karen L. Ferguson
             Karen L. Ferguson
          Supervisory Civil Rights Analyst
         Employment Litigation Section

cc: New York District Office, EEOC
  Westchester Community Opportunity Program